McCOMBS v. MOSS.

Opinion delivered January 3, 1916.

1. BROKERS—SALE OF TIMBER—AUTHORITY—COMMISSIONS.—Plaintiff was at one time authorized by defendant to sell certain timber for him, but thereafter defendant discontinued plaintiff's agency, and plaintiff assisted one L., the then agent of defendant, in making a sale, *Held*, the plaintiff must look to L. for any compensation.

2. REAL ESTATE BROKERS—RIGHTS OF TWO BROKERS.—Where two agents have the right to negotiate the sale of land for the owner, the agent who actually brings about the sale is entitled to the commission, where the owner acted in good faith and preserved strict neutrality between the rival agents.

3. REAL ESTATE BROKERS—OTHER BROKERS—RIGHT OF OWNER TO SELL.—Where real estate is placed in the hands of an agent or broker for sale in the ordinary way, without stipulation express of implied, that the agent shall have the exclusive right to sell, the principal is not deprived of the right in good faith to make a sale himself, free from liability to the agent for his commission.

Appeal from White Circuit Court; *J. M. Jackson*, Judge; reversed.

*P. R. Andrews* and *John D. DeBois*, for appellant.

*Brundidge & Neelly*, for appellee.

SMITH, J.  In June, 1912, the appellant sold to the Henry Wrape Company, of St. Louis, Missouri, the merchantable timber on 1,810 acres of land, for the consideration of $20,466.30.  Shortly after the consummation of this sale, appellee brought suit for a commission of $1,023.30, alleged to be due him for securing the purchaser and bringing about the sale under a verbal contract which he alleged he had with appellant to sell said land.  This contract was alleged to have been made in January, 1907, and renewed from year to year under an express verbal promise to pay appellee a commission of 5 per cent. should he sell said land or bring about a sale thereof.

Appellant denied the existence of this contract, although he admitted that he had given appellee and other persons the authority to negotiate sales of his land and timber, and that compensation for such services was paid

proportionate to the terms and proceeds of the sale. Appellant testified that appellee's agency to make sales for him of the land in question under any terms was expressly cancelled in the spring of 1909, at which time he appointed one Leslie as his general agent, and gave him the exclusive agency for the sale of the timber in question. Appellant also denied that the purchaser was procured through the endeavors of appellee. And the defense was also interposed that, if appellee did in fact perform any services for which he was entitled to compensation in the negotiation of the sale of the timber, such services were rendered for Leslie, the appellant's general agent, and that appellant was not responsible therefor.

It appears that before the consummation of the sale to the Wrape Company there was an extended correspondence between that company and the appellant, all of which appears in the record in this case, and it is very earnestly insisted that the court erred in refusing appellant permission to read this correspondence in evidence, it being contended that the correspondence would show that appellee was not a party to the negotiations and was not instrumental in bringing them together.

It is also insisted that the verdict should have been directed in appellant's favor under the undisputed evidence, and that error was committed in giving and refusing various instructions set out in the record.

Appellee's evidence, however, makes a case for the jury, and if it be true, he is entitled to recover compensation for his services, provided the jury find that he was the procuring cause of the sale, and without setting out the evidence upon that question in detail it may be said that the evidence is legally sufficient to support a finding to that effect, appellee's testimony being to the effect that he introduced Mr. Frank Wrape, of the Wrape Company, and Mr. Cook, the timber estimator of that company, to Mr. McCombs for the purpose of getting them together upon the sale of the timber, and that the sale was made to the purchaser thus procured.

It is also insisted that error was committed in permitting the introduction in evidence of a letter from ap-

pellant to appellee dated January 2, 1912, it being said that, although this letter tended to show appellee's authority and agency to negotiate sales of land and timber, the letter did not relate to the timber in question. We think, however, that no error was committed in the introduction of this letter, as it tends in a measure to contradict appellant's statement about the revocation of the agency. And the same thing may be said of another letter written by appellant to one Grossback, who was a prospective purchaser. Appellant admits having written a letter in March, 1910, in which he stated to appellee that he wanted him and Leslie both to sell and both to get credit for their sales, whether they were made separately or together, and that there was plenty of land and timber for both to sell. So that we conclude that, while there was evidence from which the jury might have found that any agency which appellee may ever have had had been cancelled, and that any assistance rendered by him in the negotiation of the sale to the Wrape Company was made for Leslie, the general agent, we are unable to say that there was no evidence to support the finding of the jury that appellee had an agency and that he procured the purchaser.

(1) A large number of instructions were asked and given, which declare the law applicable to the question of the broker's right to a commission; but without setting out these instructions it may be said that the law was fairly and accurately declared in the instructions which were given, and while certain instructions asked by appellant contain correct declarations of the law, these instructions were covered by others which were given by the court. But to this general statement one exception must be made. Appellant requested the court to give an instruction numbered 11, which reads as follows:

"No. 11. You are further instructed that if you find that plaintiff was at one time the agent of the defendant to sell his timber and afterwards defendant discontinued plaintiff's agency and plaintiff assisted one Leslie, the agent of the defendant, in selling said timber, then he

must look to the agent Leslie for his commission and not to the defendant.''

(2-3)   We think this instruction is a correct declaration of the law and that it is not properly covered by any other instruction which was given. There is no question about Leslie's agency and appellee did not contend that he had an exclusive agency, but he denied that he was assisting Leslie. It is admitted that appellant has paid Leslie a commission on this sale and the evidence in the case raises the issue that if appellee is entitled to commissions, Leslie should pay them. It is settled that where two agents have the right to negotiate the sale of land for the owner, the agent who actually brings about the sale is entitled to the commission where the owner acted in good faith and preserved strict neutrality between the rival agents. *Murray* v. *Miller,* 112 Ark. 227. And it is also settled that where real estate is placed in the hands of an agent or broker for sale in the ordinary way without stipulation, express or implied, that the agent shall have the exclusive right to sell, the principal is not deprived of the right in good faith to make a sale himself free from liability to the agent for his commission. *Blumenthal* v. *Bridges,* 91 Ark. 212; *Hill* v. *Jebb,* 55 Ark. 574.

It is also settled that where a sale of real estate is made by an agent with the assistance of a sub-agent under an agreement to divide his commissions with him, such sub-agent is not entitled to recover the commission for the sale from the owner of the land, there being no privity of contract between them, and that where the owner of land employed a broker to effect a sale of land, the mere fact that the owner knew that such broker had employed a sub-agent to assist in the sale, will not constitute the sub-agent the agent of the owner, so as to entitle the sub-agent to look to the owner for compensation. *Sims* v. *St. John,* 105 Ark. 680.

The instruction numbered 11 embodies the idea that, although appellee procured the purchaser, yet if he did this as a sub-agent for Leslie, and not as agent for appel-

lant, he must look to Leslie for his commissions, and as appears from the cases above cited, this is a correct declaration of the law, and as it does not appear that the instruction was covered by any other on this subject, the judgment must be reversed for the failure of the court to give it.

For the error indicated, the judgment will be reversed and the cause remanded for a new trial.